Gari WEST and Larry West *v.* G.D. SEARLE & COMPANY,
Searle & Company, and Searle Pharmaceuticals, Inc.

93-685                                          879 S.W.2d 412

Supreme Court of Arkansas
Opinion delivered July 11, 1994

*David Hodges* and *Josh McHughes*, for appellant.

*Friday, Eldredge & Clark*, by: *Elizabeth J. Robben*; and *Sidney & Austin*, by: *William P. Richmond*, for appellee.

ROBERT H. DUDLEY, Justice. From 1971 to 1983, Gari West took Ovulen-28, a prescription drug indicated for oral contraception. The drug was manufactured and distributed by defendant Searle. In December of 1983, Gari West was diagnosed as having a hepatic adenoma, a benign liver tumor, which caused damage and extensive suffering. Hepatic adenomas may develop for no known reason, but such adenomas are often known to be caused by taking oral contraceptives. Gari West and her husband, Larry West, sued Searle and alleged that Ovulen-28 was defectively designed and manufactured, that Searle was negligent in warning of the danger of the drug, and that Searle breached the warranty of fitness for a particular purpose. The trial court granted

summary judgment on all counts, and the Wests appealed. We affirmed and modified in part and reversed and remanded in part. *West* v. *Searle & Co.*, 305 Ark. 33, 806 S.W.2d 608 (1991). Upon remand, the trial court again granted summary judgment. The Wests again appeal. This time, we affirm. The Wests' one point of appeal is that the trial court erred in granting summary judgment, but in their argument this point is divided into two major sub-points and ten minor sub-points. We divide this opinion into two parts.

### I.

In the first proceeding the trial court granted summary judgment in favor of Searle on all of the counts of the complaint. We affirmed the grant of summary judgment and the dismissal of the causes of action for negligence, breach of warranty, and strict liability for defective manufacture or inadequate warning, but we modified the dismissal to a dismissal without prejudice. *West*, 305 Ark. at 36-37, 806 S.W.2d at 610-11. Our opinion was delivered on March 18, 1991, and the mandate was handed down on April 29, 1991. Consequently, the Wests' complaint was finally dismissed without prejudice on April 29, 1991.

A dismissal of a complaint on the defendant's motion is the same as a nonsuit. *Carton* v. *Missouri Pac. R.R. Co.*, 295 Ark. 126, 747 S.W.2d 93 (1988); Ark. Code Ann. § 16-56-126 (1987). Thus, the Wests suffered a nonsuit on their counts alleging negligence, breach of warranty, and strict liability for defective manufacture or inadequate warning on April 29, 1991. By that date, the statute of limitations had run on all claims. Under section 16-56-126 of the Arkansas Code Annotated of 1987, the "saving statute," the Wests had one year to commence "new action[s]" or else the causes of action were time barred. *See Forrest City Mach. Works* v. *Lyons*, 315 Ark. 173, 866 S.W.2d 372 (1993). They did not file a new action until July 24, 1992, which was more than fourteen months from the date of the nonsuit. As a result, they were barred from proceeding on these causes of action, and for this reason we affirm the trial court's ruling dismissing those counts. The trial court dismissed those counts on the merits, but we can affirm a trial court for a reason different than the one given by the trial court. *Hubbard* v. *The Shores Group, Inc.*, 313 Ark. 498, 855 S.W.2d 924 (1993).

■ The Wests argue that their new action was merely an amendment to the original complaint and should relate back to the date of their original complaint. As authority they cite *Southwestern Bell Telephone Co.* v. *Blastech, Inc.*, 313 Ark. 202, 852 S.W.2d 813 (1993). The cited case affords no help to the Wests. In that case the plaintiff mistakenly sued "Blastech, Inc." instead of "Blastech Drilling, Inc." The plaintiff sought to add Blastech Drilling, Inc. as the named defendant and to have the amendment relate back to the date of the original filing of the complaint. The body of the complaint remained the same. We held that pursuant to Rule 15(c) of the Arkansas Rules of Civil Procedure, when "an amendment changes the party against whom the claim is asserted or adds a party after the statute of limitations has run, it may relate back to the time of filing of the original complaint." *Blastech, Inc.*, 313 Ark. at 205, 852 S.W.2d at 814. The case at bar is vastly different. Here the complaint had been dismissed without prejudice for failure to state a claim, and the Wests had one year to commence a "new action" and state a claim. Ark. Code Ann. § 16-56-126 (1987). A new action had to be filed, as distinguished from merely adding a defendant by amendment, and the new complaint was subject to the provisions of the saving statute.

Accordingly, we affirm the trial court's dismissal of the causes of action for negligence, breach of warranty, and strict liability for manufacture or inadequate warning.

II.

We did not affirm the dismissal of the count of the complaint alleging defective design, but rather reversed and remanded that count. Upon remand, Searle filed another motion for summary judgment on the count alleging design defect. The trial court ruled that there was no genuine issue as to any material fact and correctly granted summary judgment on this count.

■■ Before strict liability is imposed for a design defect, the plaintiff must show that the product was in a defective condition which rendered it unreasonably dangerous. *See* Ark. Code Ann. § 16-116-101 (1987); *West*, 305 Ark. at 41, 806 S.W.2d at 613. The Wests alleged that Ovulen-28 was defectively designed because it had twice the level of estrogen that was necessary for

effective birth control. Their proof of this design defect was the statement of Frank M. Sturtevant, Ph.D. that Ovulen-28 contained 100 micrograms of "estrogen" while Demulen, another oral contraceptive, contained only 50 micrograms. However, Searle offered additional evidence by Dr. Sturtevant that these two "estrogens" actually differ in pharmacologic activity, so that the 100 mcgs. of mestranol in Ovulen-28 is equivalent to the 50 mcgs. of ethinyl estradiol in Demulen. Dr. Sturtevant explained that mestranol must be converted to ethinyl estradiol to become active as an estrogen. The Wests presented no evidence to show that there is a difference in pharmacologic activity between 100 mcgs. of mestranol and 50 mcgs. of ethinyl estradiol. Thus, the trial court correctly held that there was no showing that Ovulen-28 was defectively designed so that it was unreasonably dangerous, and we affirm the grant of summary judgment on this count.

■■ The Wests contend that a Food and Drug Administration regulation preempts state law, requiring a warning to the user, Gari West, of the danger of the contraceptive, and that Searle gave no such warning. It is undisputed that Searle did not give a warning directly to Gari West. Even so, and even if the Wests were not to come within the law of the case doctrine on this issue, the argument is without merit. The applicable Food and Drug Administration regulation requires a manufacturer to ship a leaflet or pamphlet to the *dispenser* which fully informs the patient of the benefits and risks involved in the use of oral contraceptives. *See* 21 C.F.R. § 310.501(a)-(c) (1993). This was the requirement at the time Gari West was taking the contraceptives. *See* 41 F.R. 53639 (1976); 43 F.R. 4230 (1978). The duty imposed on Searle was to include this information, using the language required by the Food and Drug Administration, when it shipped the product to the dispenser. "Dispenser" is defined by the Food and Drug Administration as the "pharmacist, physician, nurse, or other person [dispensing the drug]." 43 F.R. 4215 (1978). The responsibility for informing the patient rests with the dispenser. *See* 21 C.F.R. § 310.501(a). Searle presented evidence that it had complied with these requirements and gave adequate warning to the dispenser, and the medical doctor who dispensed the product stated that he received the warnings. In sum, the trial court correctly granted summary judgment, and we affirm the judgment.

Searle has filed a motion for costs and fees for preparing a supplemental abstract. That motion is denied.

Affirmed.

GLAZE, CORBIN, and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, concurring in part, dissenting in part. The majority is correct that the trial court's dismissal of the causes of action for negligence, breach of warranty, and strict liability for manufacture or inadequate warning must be affirmed due to untimeliness.

I take issue with the affirmance of the dismissal of the defective design count regarding the birth control pill, Ovulen-28. We are dealing with an order for summary judgment. To withstand summary judgment, a party need only show that what is before the court presents a genuine issue of material fact. Ark. R. Civ. P. 56(c). Here, the Wests did that. They proved by the deposition of Frank Sturtevant, Ph.D., a retired Searle employee, that the estrogen levels of Ovulen-28 were high and twice the level of a companion pill, Demulen. In addition, Dr. Dean Kumpuris, a medical doctor, noted in his deposition that a correlation existed between estrogen levels in birth control pills and liver tumors: ". . . but as a general principle, estrogens and birth control pills cause —give you an increased chance of having hepatic adenomas." Searle argued, based on Frank Sturtevant's testimony, that in reality the estrogen levels of Ovulen-28 at 100 micrograms and Demulen at 50 micrograms were the same. The majority opinion accepts that. But Sturtevant also revealed that Ovulen-28 was removed from the market due to an effort by Searle to replace it with a product with a lower dosage of estrogen. What follows is his testimony on that point:

Q. Is Ovulen-28 or 21 still on the market?

A. No.

Q. When was it taken off?

A. I don't recall specifically.

Q. Do you know why it was taken off?

A. Yes.

Q. Why?

A. First of all, let me say that Ovulen had 100 micrograms of Mestranol, which is the estrogen.

There had been developing a consensus within the medical community that satisfactory and adequate estrogen dosage of 50 micrograms are lower and resulted in patient acceptance and acceptable efficacy; and, therefore, products with more than 50 micrograms were not necessary.

As a result of that, Searle did not summarily remove Ovulen from the market, but it merely phased it out.

It advised the medical and I believe the pharmacy communities that it was being phased out and no longer manufactured; and it dribbled out.

Q. Did they reduce the amount of estrogen to 50 milligrams?

A. Searle had a product Demulen that had 50 micrograms of a final Estradiol; however, depending upon what target tissues you measure, 50 micrograms of Estradiol would be equivalent to 100 micrograms of Nestranol (sic), which was in the Ovulen. Mestranol must be converted to Estradiol to become active as an estrogen.

So one could say well, there is really no difference between Ovulen and Demulen 150; however, companies were constantly investigating lower and lower doses in different ratios, and it came a point in time where Searle marketed Demulen 135, which has 35 micrograms of a final Estradiol.

This testimony from a retired Searle employee is a far cry from proof that the estrogen levels of Ovulen-28 equated to those of other Searle products or that Ovulen-28 did not contain higher levels of estrogen than other Searle products. Otherwise, why did Searle take pains to reduce its dosage levels to 35 micrograms and remove Ovulen-28 from the market? In short, whether Ovulen-28 was unreasonably dangerous before its removal from public consumption was for a jury to resolve.

I would reverse the order of summary judgment on defec-

tive design and remand that issue to the trial court for a trial on the merits.

GLAZE and CORBIN, JJ., join.