(No. 78520.—

ROBERT LEE MARTIN III, a Minor, by His Parents, Robert Lee Martin, Jr., and Clyntie Martin, Appellee, v. ORTHO PHARMACEUTICAL CORPORATION, Appellant.

*Opinion filed January 18, 1996.*

HARRISON, J., took no part.

Thomas F. Lucas, of Burditt & Radzius, Chrtd., of Chicago (Charles J. Walsh and Steven R. Rowland, of Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., of Newark, New Jersey, of counsel), for appellant.

William J. Jovan, of Chicago, for appellee.

William P. Richmond, Michael W. Davis, Jeffrey R. Tone and James B. Speta, of Sidley & Austin, of Chicago, for amici curiae G.D. Searle & Co. et al.

Bruce N. Kuhlik and Caroline M. Brown, of Covington & Burling, of Washington, D.C. (Marjorie E. Powell, of counsel), for amicus curiae Pharmaceutical Research & Manufacturers of America.

Jonathan L. Loew and David I. Schrodt, of Spitzer, Addis, Susman & Krull, of Chicago, for amicus curiae Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiffs, on behalf of their minor child, brought

suit in the circuit court of Cook County against the manufacturer of the oral contraceptive which the mother ingested during her pregnancy, alleging that the manufacturer's failure to warn the mother of the dangers of the oral contraceptive was the proximate cause of their child's birth defects. This court has previously held, under the learned intermediary doctrine, that a pharmaceutical manufacturer's duty to warn runs only to the prescribing physician, and not to the user of the drugs. In this cause, we consider the application of the learned intermediary doctrine in light of a Federal regulation requiring pharmaceutical manufacturers to provide direct warnings of the dangers associated with oral contraceptives to users.

## Factual Background

In April of 1979, Clyntie Martin went to a physician, Dr. Sloniewicz, because she was having cramps and had missed a menstrual period. Dr. Sloniewicz did not believe that Martin was pregnant. He was mistaken in this belief. After examining her, he instructed her to return for another appointment. At the second appointment, Dr. Sloniewicz again failed to diagnose Martin's pregnancy. He then prescribed Ortho-Novum 1/50, a prescription oral contraceptive manufactured by the defendant, Ortho Pharmaceutical Corporation, after Martin told him she was concerned about becoming pregnant. In her deposition, Martin testified that her doctor told her to begin taking the pills at the end of her next period. Contrary to her doctor's instructions, however, she began taking the pills about seven days later. Martin again missed her menstrual period and, in July of 1979, she realized that she was pregnant. On December 8, 1979, Martin gave birth to her son, Robert. Robert was born with orthopedic deformities of his arms, hands, and fingers. Otherwise, he was fully developed.

In February of 1981, plaintiffs, Robert Lee Martin,

Jr., and Clyntie Martin, on behalf of their minor son, Robert Lee Martin III, filed an action against defendant, Ortho Pharmaceutical Corporation, alleging that Ortho-Novum 1/50 caused Robert's limb reductions and seeking damages for these birth defects. Plaintiffs also filed a malpractice action against Dr. Sloniewicz. In 1983, plaintiffs settled their malpractice claim against Dr. Sloniewicz for approximately $900,000 and dismissed him from the action. After a trial date had been set for plaintiffs' action against defendant, plaintiffs voluntarily dismissed the action pursuant to section 2—1009 of the Code of Civil Procedure (735 ILCS 5/2—1009 (West 1992)).

On January 7, 1991, four days after plaintiffs dismissed their action, they refiled their complaint against defendant. This complaint alleged that Ortho-Novum 1/50 was unreasonably dangerous because it was not accompanied by a warning to the general public, users and consumers, that the drug caused physical deformities in the children of mothers who ingested it. The defendant moved for summary judgment arguing that, under the learned intermediary doctrine, its duty to warn was limited to providing warnings to the prescribing physician, and that its warnings to Dr. Sloniewicz were adequate as a matter of law. The trial judge granted summary judgment in favor of the defendant.

The appellate court reversed. (268 Ill. App. 3d 980.) It concluded that an exception to the learned intermediary doctrine existed for manufacturers of oral contraceptives, and that the adequacy of defendant's direct warnings to Martin was a question of fact that precluded the entry of summary judgment in defendant's favor.

We allowed the defendant's petition for leave to appeal. (145 Ill. 2d R. 315.) Subsequently, we granted leave to the Pharmaceutical Research and Manufacturers of

America and G.D. Searle & Company, Syntax Laboratories, Wyeth-Ayerst Laboratories, and Parke-Davis to file *amicus curiae* briefs in support of defendants; we granted leave to the Illinois Trial Lawyers Association to file a brief as *amicus curiae* in support of plaintiffs. (134 Ill. 2d R. 345.) We reverse.

## Analysis

In *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 517, this court, consistent with the majority of other jurisdictions, adopted the learned intermediary doctrine. This doctrine provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of a drug's known dangerous propensities and that physicians, in turn, using their medical judgment, have a duty to convey any relevant warnings to their patients. The learned intermediary doctrine, a rule of common law origin, is an exception to the general rule that a failure to warn of a product's dangerous propensities may serve as a basis for holding a manufacturer strictly liable in tort. The underlying rationale for the learned intermediary doctrine was set forth in *Kirk*:

> " ' "Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, [an] individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies *** in selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer." ' " (*Kirk*, 117 Ill. 2d at 518, quoting *Stone v. Smith, Kline & French Laboratories* (1984), 731 F.2d 1575, 1579-80.)

Pursuant to the doctrine, there is no duty on the part of

the manufacturer of prescription drugs to directly warn patients. *Kirk*, 117 Ill. 2d at 519.

Plaintiffs do not dispute the continued viability of the learned intermediary doctrine in Illinois. Nor do plaintiffs allege that the warnings supplied by the defendant to Martin's prescribing physician were inadequate. Rather, plaintiffs argue that an exception to the learned intermediary doctrine exists for the manufacturers of oral contraceptives. Plaintiffs predicate this proffered exception upon a Federal regulation that defendant concedes was applicable at the time Martin received her contraceptives. This regulation provides:

> "(a) Oral contraceptives. (1) The commissioner of Food and Drugs concludes that the safe and effective use of oral contraceptive drug products requires that patients be fully informed of the benefits and risks involved in the use of these drugs. Information in lay language concerning effectiveness, contraindication, warnings, precautions, and adverse reactions shall be furnished to each patient receiving oral contraceptives. This information shall be given to the patient by the dispenser in the form of a brief summary of certain essential information included in each package dispensed to each patient, and in a longer, detailed labeling piece in or accompanying each package dispensed to each patient." (21 C.F.R. § 310.501 (supplementary information) (1978) (hereinafter section 310.501).)

The appellate court agreed with the plaintiffs, finding that section 310.501 precluded the application of the learned intermediary doctrine. It reasoned that where direct warnings to users of prescription drugs have been mandated by a safety regulation promulgated for their protection, an exception to the learned intermediary doctrine exists because failure on the part of the manufacturer to comply can render the drug unreasonably dangerous. (268 Ill. App. 3d at 984.) We disagree.

The issue before us is one of duty, a question of law to be determined by the court. (*Kirk*, 117 Ill. 2d at 525.) This court has suggested that FDA regulations may be

relevant in determining whether a manufacturer has complied with its existing common law duty to provide warnings *to physicians* pursuant to the learned intermediary doctrine. (See, *e.g.*, *Batteast v. Wyeth Laboratories, Inc.* (1990), 137 Ill. 2d 175, 187-88 (examining, *inter alia*, whether defendant pharmaceutical manufacturer failed to warn the prescribing physician of dangers associated with drug in light of FDA guidelines).) Here, however, plaintiffs attempt to use a Federal regulation—section 310.501—to establish the existence of a heretofore unrecognized tort duty, *i.e.*, a pharmaceutical manufacturer's duty to directly warn users.

Thus, although plaintiffs assert that they are not requesting this court to recognize a common law exception to the learned intermediary doctrine, in actuality they are requesting exactly that. Plaintiffs concede that defendant provided adequate warnings to plaintiffs' prescribing physician, thus satisfying its obligations under the learned intermediary doctrine. Now this court must determine whether plaintiffs have a heretofore unrecognized cause of action in State court premised upon defendant's purported noncompliance with section 310.501, a Federal regulation.

In concluding that such a private cause of action exists, the appellate court relied on the doctrine that the violation of a statute, ordinance, or regulation designed for the protection of life or property is *prima facie* evidence of negligence. Under this doctrine, a party injured by such a violation has a cause of action provided: (1) that he or she falls within the class intended to be protected; and (2) the injury suffered is a direct and proximate result of the violation. See *Kalata v. Anheuser Busch Cos.* (1991), 144 Ill. 2d 425.

The appellate court, however, erred in concluding without further analysis that if both these conditions are satisfied, plaintiff necessarily has a private cause of

action against the alleged tortfeasor. To determine whether a private cause of action exists under a Federal statute or regulation absent specific statutory authority, a court must also consider the policy underlying the legislation and the overriding purpose of the act. The determining factor in addressing the issue of implied private rights with regard to Federal legislation is legislative intent. (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 388.) Indeed, this inquiry is all the more crucial where, as in the instant case, plaintiffs seek to maintain a cause of action under a Federal regulation that conflicts with established State common law.

*Boyer v. Atchison, Topeka & Santa Fe Ry. Co.* (1967), 38 Ill. 2d 31, illustrates the point. The *Boyer* plaintiff, a passenger on defendant's train, was thrown to the floor and injured when the train's emergency brakes were suddenly applied after a defective coupler broke. Plaintiff alleged that the defendant had violated section 2 of the Federal Safety Appliance Act by operating a train with a defective coupler and that defendant was therefore absolutely liable to plaintiff in tort. This court reasoned that, in order to determine whether a cause of action existed under the Federal statute, it should look to Federal decisions for guidance. (*Boyer*, 38 Ill. 2d at 34.) After examining the Federal decisions interpreting that Act, this court concluded that Congress had intended for the Act to provide a basis for civil recovery. *Boyer*, 38 Ill. 2d at 34.

The analytical framework applied in *Boyer* applies also in the instant action. Like the *Boyer* plaintiff, the instant plaintiffs seek to premise a private cause of action in State court upon defendant's alleged violation of Federal legislation. Therefore, to determine whether a cause of action for a violation of section 310.501 exists, we examine whether such a cause of action has been

recognized by the Federal courts or whether recognizing such a cause of action comports with Federal legislative intent.

This inquiry forecloses plaintiff's cause of action. Federal courts have uniformly refused to imply a private cause of action under the Food, Drug and Cosmetic Act (FDCA), under which Federal regulation 310.501 was promulgated. (See, *e.g.*, *Pacific Trading Co. v. Wilson & Co.* (7th Cir. 1976), 547 F.2d 367.) In *National Women's Health Network, Inc. v. A.H. Robins Co.* (D. Mass. 1982), 545 F. Supp. 1177, 1178, 1180, the court observed that all indications led unmistakably to the conclusion that Congress did not intend for a private right of action under the FDCA, and further noted that every other Federal court which has faced the issue had reached the same conclusion.

While plaintiffs concede that Federal courts have held that no private cause of action exists under the FDCA, they suggest that these decisions are irrelevant since plaintiffs rely on the regulation to establish defendant's duty, and do not attempt to bring an action directly under the FDCA or its accompanying regulations. In support, plaintiffs cite *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods* (N.D. Ill. 1989), 720 F. Supp. 714. The *Grove Fresh* plaintiffs alleged that defendant violated the Lanham Act (15 U.S.C. § 1051 *et seq.* (1988)) by intentionally misrepresenting the composition of defendant's orange juice product. Defendant moved to dismiss the complaint, alleging that even though it was brought under the Lanham Act, the action was essentially an impermissible attempt to recover damages under the FDCA, for the sole thrust of the complaint was that defendant violated an FDA regulation which defined "orange juice from concentrate." In rejecting this argument, the court stated:

"Although courts have held that there is no private cause of action under the FDCA, [plaintiff] has not brought suit

directly under the FDCA or its accompanying regulations. [Plaintiff] relies on the FDA regulation merely to establish the standard or duty which defendant allegedly failed to meet. Nothing prohibits [plaintiff] from using the FDCA or its accompanying regulations in that fashion." *Grove Fresh*, 720 F. Supp. at 716.

*Grove Fresh* is of no avail to plaintiffs. The FDA regulation at issue in *Grove Fresh* was relevant to the issue of whether defendant violated the Lanham Act—an act which, by its express provisions, provided an independent statutory basis for plaintiff's private cause of action against defendant. In contrast, the instant plaintiffs cannot provide any independent basis for their cause of action, thus rendering *Grove Fresh* inapplicable.

A majority of courts considering the question have held that the FDA regulations concerning contraceptive pharmaceuticals should not serve as a basis to displace or create exceptions to the learned intermediary doctrine. (See *MacPherson v. Searle & Co.* (D.C. 1991), 775 F. Supp. 417 (applying District of Columbia law); *West v. G.D. Searle & Co.* (1991), 305 Ark. 33, 806 S.W.2d 608, *appeal on remand* (1994), 317 Ark. 525, 879 S.W.2d 412; *Zanzuri v. G.D. Searle & Co.* (S.D. Fla. 1990), 748 F. Supp. 1511 (applying Florida law); *Reaves v. Ortho Pharmaceutical Corp.* (E.D. Mich. 1991), 765 F. Supp. 1287 (applying Michigan law).) Admittedly, several jurisdictions have declined to follow the learned intermediary doctrine and have imposed liability in actions involving prescription contraceptives as the result of the FDA regulations. (*Hill v. Searle Laboratories* (8th Cir. 1989), 884 F.2d 1064 (applying Arkansas law); *Odgers v. Ortho Pharmaceutical Corp.* (E.D. Mich. 1985), 609 F. Supp. 867; *Stephens v. G.D. Searle & Co.* (E.D. Mich. 1985), 602 F. Supp. 379; *MacDonald v. Ortho Pharmaceutical Corp.* (1985), 394 Mass. 131, 475 N.E.2d 65; *Lukaszewicz v. Ortho Pharmaceutical Corp.* (E.D. Wis. 1981), 510

F. Supp. 961, 963, *amended by order* (E.D. Wis. 1981), 532 F. Supp. 211.) However, several of these decisions have been called into question by subsequent rulings and appear to constitute the minority rule. See *West*, 317 Ark. at 529, 879 S.W.2d at 414 (implicitly rejecting the reasoning advanced in *Hill*); *Reaves*, 765 F. Supp. at 1290 (repudiating the holding in *Odgers* and *Stephens*); *McDonald*, 394 Mass. at 144, 475 N.E.2d at 73 (O'Connor, J., dissenting) (observing that "[t]o my knowledge, no other court has embraced the rule laid down today by the court").

We agree with those decisions which have declined to recognize an exception to the learned intermediary doctrine for manufacturers of contraceptive pharmaceuticals. By refusing to abrogate State common law in light of a Federal regulation, these courts have recognized the important policy considerations underlying the learned intermediary doctrine. The doctrine rests on the assumption that prescribing physicians, and not pharmaceutical manufacturers, are in the best position to provide direct warnings to patients concerning the dangers associated with prescription drugs.

In conclusion, defendant fulfilled its duty under Illinois law at the time it provided adequate warnings to the prescribing physician. Since we decline to recognize an exception to the learned intermediary doctrine in Illinois for manufacturers of oral contraceptives, the decision of the appellate court is reversed. Accordingly, the judgment of the trial court, granting summary judgment in favor of the defendant, is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.