955 F.Supp. 700 (1997)
In re NORPLANT CONTRACEPTIVE PRODUCTS LIABILITY LITIGATION.
Jennifer BURTON
v.
AMERICAN HOME PRODUCTS CORPORATION, a Delaware Corporation d/b/a Wyeth-Ayerst Laboratories, and Wyeth Laboratories, Inc.
Theresa GOINS (Harrison) and Andrea Elaine Haught
v.
AMERICAN HOME PRODUCTS CORPORATION, a Delaware Corporation d/b/a Wyeth-Ayerst Laboratories, and Wyeth Laboratories, Inc.
Beverly McDANIEL
v.
AMERICAN HOME PRODUCTS CORPORATION, a Delaware Corporation d/b/a Wyeth-Ayerst Laboratories, and Wyeth Laboratories, Inc.
Kristy YOUNGBLOOD
v.
AMERICAN HOME PRODUCTS CORPORATION, a Delaware Corporation d/b/a Wyeth-Ayerst Laboratories, and Wyeth Laboratories, Inc.
Nos. 1:95-CV-5360, 1:95-CV-5178, 1:95-CV-5243 and 1:95-CV-5229.
United States District Court, E.D. Texas, Beaumont Division.
March 4, 1997.
*701 *702 Chris Parks of Parker and Parks, Port Arthur, TX, Roger Brosnahan of Brosnahan, Joseph & Suggs, Minneapolis, MN, Turner Branch, Branch Law Firm, Alberquerque, NM, for Plaintiffs.
John W. Vardaman, F. Lane Heard III, Steve Farina of Williams & Connolly, Washington, DC, Paul W. Gertz, Larry Germer, Tonya Connell Adams of Germer & Gertz Beaumont, TX, for Defendants.
MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
SCHELL, Chief Judge.
This matter is before the court on Defendants' Motion for Summary Judgment filed on January 28, 1997. Plaintiffs filed a response on February 11, 1997. Defendants filed a reply on February 14, 1997. The court issued its Preliminary Order on Application of the Learned Intermediary Doctrine as it Pertains to Defendants' Motion for Summary Judgment ("Order") on February 20, 1997. In the Order, the court advised counsel of the court's decision to apply the learned intermediary doctrine in analyzing Plaintiffs' failure to warn claims so that counsel could prepare for oral argument on Defendants' Motion for Summary Judgment to be held on February 24, 1997.[1] Pursuant to the court's request, the parties submitted supplemental memoranda in support of their respective positions, focusing particularly on the issues of causation and whether the learned intermediary doctrine applies to each of Plaintiffs' theories of liability. On February 24, 1997, after consideration of the parties' submissions and applicable law and after hearing oral argument, the court announced its decision to grant Defendants' Motion for Summary Judgment. This written opinion and order sets forth more fully the court's reasons for granting the motion.

INTRODUCTION
On August 5, 1996, the court denied Plaintiffs' Motion for Class Certification, which sought to certify a nationwide class of "all persons ... who have suffered or may suffer injury as a result of using Norplant designed, manufactured, supplied, distributed, sold and/or placed in the stream of interstate commerce by Defendants."[2] In the court's Memorandum Opinion and Order Denying Plaintiffs' Motion for Class Certification and Dismissing Class Complaint, the court decided that class certification was premature and that bellwether trials were necessary to aid the court in determining the appropriateness of issue certification under Federal Rule of Civil Procedure 23(c)(4) for a nationwide class of Norplant plaintiffs.[3] This action is the first of three bellwether trials in MDL 1038 and involves five plaintiffs.[4] The five plaintiffs are Jennifer Burton, Theresa Goins, Andrea Haught, Beverly McDaniel, and Kristy Youngblood (hereinafter "Plaintiffs").
Plaintiffs contend that American Home Products Corporation ("AHP") and its subsidiary Wyeth Laboratories Inc. ("Wyeth") (collectively "Defendants") failed to adequately warn both the consumers and the prescribing physicians of the side effects associated with the use of Norplant.[5] Plaintiffs complain that Norplant caused multiple side effects, including prolonged menstrual bleeding, headaches, mood changes, depression, weight gain, hair loss, arm pain, dizziness, and nausea.[6] Plaintiffs contend that Defendants' failure to adequately warn of these *703 side effects gives rise to liability under theories of strict liability, negligence, misrepresentation, breach of implied warranty of merchantability, and under the Texas Deceptive Trade Practices Act ("DTPA").[7]

APPLICABLE LAW
Because jurisdiction over these cases is based on diversity of citizenship, Texas law governs the determination of the substantive issues.[8] The United States Supreme Court in Erie held that federal courts must follow the substantive law decisions of the state's highest court.[9] Texas appellate courts have adopted and applied the learned intermediary doctrine in cases involving a drug manufacturer's duty to warn about the potential hazards of prescription drugs. These decisions have been cited with approval by the Texas Supreme Court.[10] However, neither the Texas Supreme Court nor any other Texas appellate court has dealt with a failure-to-warn claim involving a prescription contraceptive.[11] Where the issues involved are ones upon which the state supreme court has not yet ruled, federal courts must attempt to predict how the state supreme court, if presented with the question, would decide the issue. Therefore, this court must make an Erie-guess. To aid in the court's decision, the court looks to existing Texas caselaw involving prescription drugs and the treatment of failure-to-warn claims involving prescription contraceptives in other jurisdictions.[12]

I. TEXAS FAILURE-TO-WARN CASES INVOLVING PRESCRIPTION DRUGS
"In a failure to warn case, the plaintiff must show that the warning was defective and that this failure to warn was the producing cause of the plaintiff's injury."[13] "For cases involving a drug manufacturer's duty to warn, Texas courts apply the `learned intermediary' doctrine."[14] Under the learned intermediary doctrine, "when a drug manufacturer properly warns a prescribing physician of the dangerous propensities of its product, the manufacturer is excused from warning each patient who receives the drug. The doctor stands as a learned intermediary between the manufacturer and the ultimate consumer."[15] "[O]nce the physician is warned, the choice of which drugs to use and the duty to explain the risks become that of the physician."[16] "However, ... when the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user" as a result of the defective warning.[17] While Texas cases applying the learned intermediary *704 doctrine do not involve prescription contraceptives, an exception to the doctrine for contraceptives such as Norplant is not warranted according to the overwhelming weight of authority from other jurisdictions.

II. FAILURE-TO-WARN CASES INVOLVING PRESCRIPTION CONTRACEPTIVES
Though the court was unable to locate any cases dealing with the issue of applying the learned intermediary doctrine in cases involving the Norplant contraceptive in particular, courts outside Texas have repeatedly rejected arguments by plaintiffs that oral contraceptives and IUDs should be excepted from the doctrine.[18] Only a single jurisdiction, Massachusetts, recognizes an exception to the doctrine for prescription contraceptives.[19] Plaintiffs argue that Michigan and Arkansas also created an exception to the learned intermediary doctrine for prescription contraceptives,[20] but this argument is somewhat misguided. Although two federal district court decisions from Michigan created an exception to the doctrine for oral contraceptives,[21] a third, more recent decision by another district court held that this is an incorrect statement of Michigan law and that the learned intermediary doctrine applies.[22] Similarly, the prediction of the United States Court of Appeals for the Eighth Circuit that Arkansas would adopt an exception for contraceptives[23] has been repudiated by the supreme *705 court of that state.[24] Despite the overwhelming majority of jurisdictions that have refused to create an exception to the learned intermediary doctrine for prescription contraceptives, Plaintiffs argue that the court should create an exception for Norplant under Texas law.

III. CREATING AN EXCEPTION TO THE LEARNED INTERMEDIARY DOCTRINE FOR NORPLANT?
Plaintiffs contend that the court should create an exception to the learned intermediary doctrine for Norplant because: (1) Defendants' actions effectively displaced the physician, thereby making application of the learned intermediary doctrine improper; and (2) prescription contraceptives, as opposed to other prescription drugs, are an exception to the learned intermediary doctrine.[25] For the following reasons, the court finds Plaintiffs' contentions to be without merit and determines that the Texas Supreme Court, if presented with the question, would apply the learned intermediary doctrine in these cases.

A. Defendants' Conduct Did Not Result in the Displacement of the Prescribing Physician
Plaintiffs cite Reyes v. Wyeth Laboratories[26] for the proposition that when the physician's role is abrogated, the learned intermediary doctrine no longer applies.[27] In Reyes, however, no physician played any role in the decision to prescribe and dispense to the plaintiffs' child an oral polio vaccine, or in counseling with the parents as to possible side effects, or in administering the drug.[28] Unlike the circumstances in Reyes, physicians are involved in prescribing and implanting Norplant. Furthermore, those prescribing physicians have a duty to discuss the risks and benefits of Norplant with each patient. Clearly, Norplant is administered in the context of a physician-patient relationship.[29]
In addition, Plaintiffs argue that this court should extend the Reyes holding to these cases because the physician assumes a passive role in that "the [Norplant prescribing] physicians essentially became conduits for passing on Wyeth materials"[30] and that Wyeth was guilty of "consciously removing the physician from the decision making process."[31] However, the Fifth Circuit has indicated that the Reyes exception is limited to cases in which the physician-patient relationship is nonexistent. In Hurley v. Lederle Laboratories,[32] the court rejected the plaintiffs' argument for an extension of Reyes beyond its facts:
Unlike Reyes, here the child's personal physician prescribed the shot, and the vaccine was administered under the supervision of the physician in his office by his nurse. In short, there is no question whatsoever but that a patient-physician relationship existed....
. . . .
... [B]ecause the physician-patient relationship existed, and because the doctor *706 had thus assumed the role of learned intermediary, the fact that he had made no individualized judgment did not bar the application of the learned intermediary doctrine to relieve the manufacturer of liability.[33]
This language from Hurley makes it clear that as long as a physician-patient relationship exists, failure by the physician to advise the patient of the hazards of a prescription drug will not bar application of the doctrine. Moreover, if any physician allowed himself to become a mere conduit for Wyeth's materials, then it is the physician who is responsible. By the same token, Wyeth cannot remove a physician from the decision making process, only the physician can do that by avoiding his responsibility to make an individualized balancing of the risks and benefits associated with a drug and to advise the patient of possible adverse reactions.

B. Prescription Contraceptives Are Not an Exception to the Learned Intermediary Doctrine
As discussed earlier, Plaintiffs cite the Massachusetts Supreme Court's decision in MacDonald v. Ortho Pharmaceutical Corp.,[34] as well as three other cases which have since been criticized and rejected, for the proposition that the learned intermediary doctrine does not apply to prescription contraceptives.[35] Plaintiffs argue that because the patient makes the ultimate decision to select Norplant as her contraceptive (the "active patient/passive physician" argument)[36] and Defendants engaged in a direct-to-consumer marketing campaign to exploit that fact,[37] the court should carve out an exception to the learned intermediary doctrine for Norplant.

1. The Active Patient/Passive Physician Argument
Plaintiffs rely on McDonald in setting out the active patient/passive physician rationale for creating an exception to the learned intermediary doctrine:
Oral contraceptives ... bear peculiar characteristics which warrant the imposition of a common law duty on the manufacturer to warn users directly of associated risks. Whereas a patient's involvement in decision-making concerning use of a prescription drug necessary to treat a malady is typically minimal or nonexistent, the healthy, young consumer of oral contraceptives is usually actively involved in the decision to use "the pill," as opposed to other available birth control products and the prescribing physician is relegated to a relatively passive role.
. . . .
The oral contraceptive thus stands apart from other prescription drugs in light of the heightened participation of patients in decisions relating to use of "the pill"; the substantial risks affiliated with the product's use; the feasibility of direct warnings by the manufacturer to the user; the limited participation of the physician (annual prescription); and the possibility that oral communications between physicians and consumers may be insufficient or too scanty standing alone fully to apprise consumers of the product's dangers at the time the initial selection of a contraceptive method is made as well as at subsequent points when alternative methods may be considered.[38]
However, no state court has adopted the active patient/passive physician rationale as a basis for an exception to the doctrine in the 12 years since the McDonald decision.
*707 Even if it were true that women play a greater role in selecting among prescription contraceptives, these products are nevertheless available only by prescription from a physician. The fact that the patient plays a role in deciding to use a particular prescription drug does not diminish the physician's role in determining her suitability for different drugs and in counseling with her as to the benefits and potential risks of each. As the Supreme Court of Washington explained in an IUD case, the physician always is involved in consultation and has both the unique opportunity and responsibility to warn a woman of potential side effects:
The physician does not confine his practice to the curing of maladies. He is concerned with the total health and physical well-being of his patients and appropriately gives advice upon preventive measures. Certainly the insertion of the Dalkon Shield requires a physician's services, his knowledge and his skill. While the physician does not make the final choice but leaves that to the patient, he advises the patient with respect to the advantages and disadvantages of various choices ... and it is he who supplies and inserts the device.
The fact that the patient makes the final choice among suggested contraceptives (or decides not to use any at all) does not constitute a distinction which makes the general rule inapplicable.[39]
This court finds that there is no principled distinction to be drawn between prescription contraceptives and other prescription drugs insofar as application of the learned intermediary doctrine is concerned, as long as a physician is involved. The physician has the duty as the learned intermediary to make an individualized balancing of the risks and benefits of any prescription drug contemplated for a particular patient and to advise the patient of possible adverse reactions. The mere fact that one drug is for the purpose of contraception and another drug is for another purpose should not affect the application of the doctrine. The fact that prescription contraceptives are elective and other prescription drugs are therapeutic should not affect the application of the doctrine.

2. Defendants' Marketing Campaign
According to Plaintiffs, Wyeth engineered an unparalleled marketing campaign, which distinguishes Norplant from the cases involving oral contraceptives and IUDs. Plaintiffs assert that Defendants assumed the duty to warn Plaintiffs by not only engaging in direct-to-consumer advertising, but also funneling Norplant promotional materials to the patient through the physician.[40]

a. Direct-to-Consumer Advertising
Plaintiffs allege that Wyeth engaged in an aggressive publicity campaign targeted to consumers that included the placement of several "puff pieces" in consumer magazines by Wyeth's public relations firm.[41] Plaintiffs argue that if a drug manufacturer should *708 choose to go around the physician and market a drug directly to the patient, the manufacturer should be held to a duty in its advertisements to fairly and accurately present not only the benefits, but also the risks and potential side effects of the drug. In their response, Plaintiffs go on to state that "if the law were otherwise, Wyeth would have no legal responsibility for any information it provides to a patient irrespective of content or form."[42] However, the Food and Drug Administration ("FDA") reviews direct-to-consumer advertising "to ensure that [the advertising is] not false or misleading and [is] in fair balance."[43] Further, regardless of FDA approval, the court need not scrutinize Wyeth's direct-to-consumer advertising. Because Plaintiffs admit they never saw any Norplant advertising prior to their implantation,[44] Wyeth's direct-to-consumer advertising could not have somehow vitiated the role of the learned intermediary.[45]

b. Norplant Materials Distributed Through the Physician
Plaintiffs contend that Wyeth's "dissemination of promotional materials disguised as patient informational brochures and videotapes require that Wyeth's duty to warn go directly to the consumer."[46] According to Plaintiffs, "[t]he woman's decision was made after reviewing deceptive materials created by Wyeth to highlight the promotional features of the product."[47] Defendants argue that patient labeling and other counseling materials are not intended to supplant the advice and guidance of the physician but rather are designed to facilitate counseling of the patient by her physician.[48] Other courts have held that the drug manufacturer's provision of patient labeling or other counseling materials "should not serve as a basis to displace or create exceptions to the learned intermediary doctrine."[49] The court agrees with those courts that view such patient materials as an informational supplement to the physician-patient relationship. Moreover, because these materials are distributed by the physician, the court is of the opinion that the physician, as the learned intermediary, has a duty to review the materials before passing them on to the patient in order to ensure that any such materials that the physician chooses to pass on will accurately inform the patient about the drug.[50] Once *709 again, if a physician became a mere conduit for Wyeth materials, then it is the physician who is responsible for allowing that to happen.
For the foregoing reasons, the court finds that an exception to the learned intermediary doctrine is not warranted.

IV. SCOPE OF THE LEARNED INTERMEDIARY DOCTRINE
Before analyzing the appropriateness of summary judgment, the court must determine the scope of the learned intermediary doctrine, that is whether the learned intermediary doctrine applies to all claims grounded upon failure to warn. Defendants contend that although Plaintiffs' allege a variety of different causes of action  for strict liability, negligence, misrepresentation, implied warranty, and under the DTPA, each claim is based upon failure to warn. And therefore, each claim requires Plaintiffs to prove (1) that the warnings provided by Wyeth to their prescribing physicians failed adequately to disclose the potential side effects complained of by Plaintiffs and (2) that the alleged inadequacies in Wyeth's warnings were a producing or proximate cause of the particular injuries alleged by Plaintiffs.[51] Plaintiffs counter that the learned intermediary doctrine does not apply to their claims for misrepresentation and violations of the DTPA arising out of a drug manufacturer's voluntary communications to consumers through physician-distributed materials.[52] Plaintiffs argue that supplying physicians with patient brochures and videos is extraneous to the satisfaction of the drug manufacturer's duty to warn the physician, and therefore, these materials are not covered by the learned intermediary doctrine. It follows, according to Plaintiffs, that the drug manufacturer who voluntarily undertakes to supply patient materials to the physician may be sued by the patient if these materials, standing alone, are misleading or deceptive. Plaintiffs' argument is flawed, however, because the alleged misrepresentation or the allegedly false, misleading, and deceptive nature of these materials is, once again, that Wyeth failed to adequately warn of the drug's side effects.
The gravamen of all of Plaintiffs' causes of action, including misrepresentation and violation of the DTPA, is that Wyeth failed to adequately warn of or disclose the severity of Norplant's side effects. Therefore, the learned intermediary doctrine applies to all of Plaintiffs' causes of action. Additionally, whether the failure to warn is couched as an affirmative misrepresentation or a misrepresentation by concealment, the allegation collapses into a charge that the drug manufacturer failed to warn. If the doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action such as violation of the DTPA or a claim for misrepresentation, then the doctrine would be rendered meaningless. Therefore, this summary judgment motion, based upon application of the learned intermediary doctrine, is dispositive of all of Plaintiffs' claims.

SUMMARY JUDGMENT

I. APPLICABLE STANDARD
Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a *710 matter of law."[53] A "dispute about a material fact is `genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[54] Because Plaintiffs bear the burden of proof at trial on the issues of adequacy of the warning and causation, Defendants are not required to "produce evidence negating the existence of a material fact"; rather Defendants' burden is "only [to] point out the absence of evidence supporting the nonmoving party's case."[55] If Defendants' motion demonstrates such an absence of evidence, "the nonmovant must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial."[56] "The test is identical to that used for a directed verdict: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[57]

II. ANALYSIS
Plaintiffs have alleged causes of action for strict products liability, negligence, breach of implied warranty of merchantability, misrepresentation, and consumer fraud based upon the Texas Deceptive Trade Practices Act. Each of these five causes of action is based upon the allegation that Defendant Wyeth Laboratories failed to adequately warn the prescribing physicians of the type and severity of the side effects associated with the use of Norplant. And for each of these five causes of action, each plaintiff must prove under Texas law, among other elements: (1) that the warnings provided by Wyeth to her prescribing physician failed to adequately disclose the potential side effects complained of by the plaintiff and (2) that the alleged inadequacies in Wyeth's warnings were a producing or proximate cause of the particular injury(ies) or side effect(s) alleged by the plaintiff.[58]
Defendants contend in their motion that the issue of whether Wyeth's warnings to physicians are adequate need not even be reached because any alleged inadequacy was not a producing cause of the plaintiffs' injuries.[59] In order to establish producing cause in a prescription drug failure-to-warn case, "Plaintiffs must demonstrate that `a proper warning would have changed the decision of the treating physician, i.e., that but for the inadequate warning, the treating physician would not have used or prescribed the product.'"[60] Defendants contend that Plaintiffs did not create a fact issue on producing cause because the undisputed evidence shows that each plaintiff's prescribing physician was fully aware of the potential side effects alleged by the plaintiffs and the severity of those side effects before prescribing Norplant.[61]
Plaintiffs argue that even if these prescribing physicians were aware of the side effects complained of here by the plaintiffs, there was other medical information, contained in studies, Wyeth internal memoranda, and letters, about which the physicians were not aware at the time of insertion.[62] However, all five of the prescribing physicians testified unequivocally that none of the information shown to them from Wyeth's internal *711 files would have changed their minds about whether to prescribe Norplant for their patients, including the plaintiffs.[63] As the El Paso Court of Appeals held in Stewart, when the prescribing physician was aware of the possible side effects of a drug, yet, chose to use it regardless of the adequacy of the warning, then as a matter of law, the adequacy of the warning was not a producing cause of the plaintiff's injury.[64] Plaintiffs have the burden of proving that a different warning would have changed the decision of the treating physicians.[65] This, they have not done. Therefore, summary judgment is appropriate as to all claims for each of the first five bellwether plaintiffs.

CONCLUSION
Accordingly, the court hereby GRANTS Defendants' Motion for Summary Judgment as it pertains to all claims of Plaintiffs Jennifer Burton, Theresa Goins, Andrea Elaine Haught, Beverly McDaniel, and Kristy Youngblood.
NOTES
[1] Order at 1 (February 20, 1997).
[2] Pls.' First Am. Master Class Action Compl. and Demand for Jury Trial at ¶ 40.
[3] See In re Norplant Contraceptive Products Liability Litigation, 168 F.R.D. 577, 578 (E.D.Tex. 1996) (citing Castano v. American Tobacco Company, 84 F.3d 734, 750 (5th Cir.1996), for the proposition that individual trials are necessary in order to allow the court to make an informed decision regarding whether common issues predominate and whether certification of a class is superior to other methods for handling this litigation).
[4] Each of the three bellwether trials involves five plaintiffs.
[5] Pls.' Resp. to Defs.' Mot. for Summ. J. at 1-2.
[6] Id. at 2.
[7] In the court's February 11, 1997 Order Granting Defendants' Motion for Summary Judgment on Abandoned Claims, the court dismissed Plaintiffs' claims for breach of express warranty, breach of implied warranty of fitness for a particular purpose, manufacturing defect, design defect, negligent manufacture, and negligent design. This motion was not opposed by Plaintiffs.
[8] In diversity cases, federal courts must apply the substantive laws of the state in which they are located except on matters governed by the Constitution or federal statute. Erie v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).
[9] Id.
[10] See Alm v. Aluminum Co. of America, 717 S.W.2d 588, 591-92 (Tex.1986).
[11] The issue of whether the learned intermediary doctrine applies in actions involving contraceptive products was raised in Jordan v. Ortho Pharmaceuticals, Inc., 696 S.W.2d 228 (Tex.App.  San Antonio 1985, writ ref'd n.r.e.), but the court did not reach a decision on the issue.
[12] In making an Erie-guess, federal courts may properly consider the opinions of lower state courts. Vernon v. City of Los Angeles, 27 F.3d 1385, 1391 (9th Cir.1994).
[13] Rolen v. Burroughs Wellcome Co., 856 S.W.2d 607, 609-10 (Tex.App.  Waco 1993, writ denied).
[14] Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912 (5th Cir.1992) (citation omitted).
[15] Alm v. Aluminum Co. of America, 717 S.W.2d 588, 591-92 (Tex.1986) (citations omitted).
[16] Skotak, 953 F.2d at 912 (alteration in original) (quotations omitted) (quoting Stewart v. Janssen Pharmaceutica, Inc., 780 S.W.2d 910, 911 (Tex. App.  El Paso 1989, writ denied)).
[17] Alm, 717 S.W.2d at 592 (citing Bristol-Myers Co. v. Gonzales, 561 S.W.2d 801 (Tex.1978); Crocker v. Winthrop Labs., Div. of Sterling Drug, Inc., 514 S.W.2d 429 (Tex.1974)).
[18] See, e.g., Spychala v. G.D. Searle & Co., 705 F.Supp. 1024, 1032 (D.N.J.1988) (applying New Jersey law) ("The overwhelming majority of decisions have applied the learned intermediary rule to cases involving contraceptives.... There is no reason ... to differentiate between contraceptives and other prescription drugs to which the learned intermediary rule applies.") (citations and quotations omitted); West v. Searle & Co., 305 Ark. 33, 806 S.W.2d 608, 614 (1991) ("[W]e are convinced that the stated public policy reasons for the learned intermediary doctrine are present with respect to oral contraceptives."); Martin v. Ortho Pharmaceutical Corp., 169 Ill.2d 234, 214 Ill.Dec. 498, 502, 661 N.E.2d 352, 356 (1996) ("We agree with those decisions which have declined to recognize an exception to the learned intermediary doctrine for manufacturers of contraceptive pharmaceuticals."); see also Odom v. G.D. Searle & Co., 979 F.2d 1001, 1003 (4th Cir.1992) (applying South Carolina law); Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652, 656 (1st Cir.1981) (applying New Hampshire law); Lindsay v. Ortho Pharmaceutical Corp., 637 F.2d 87, 91 (2d Cir.1980) (applying New York law); MacPherson v. Searle & Co., 775 F.Supp. 417, 424-25 (D.D.C.1991) (applying District of Columbia law); Klempka v. G.D. Searle & Co., 769 F.Supp. 1061, 1065 n. 4 (D.Minn.1991) (applying Minnesota law); Reaves v. Ortho Pharmaceutical Corp., 765 F.Supp. 1287, 1291 (E.D.Mich.1991) (applying Michigan law); Zanzuri v. G.D. Searle & Co., 748 F.Supp. 1511, 1514-15 (S.D.Fla.1990) (applying Florida law); Amore v. G.D. Searle & Co., 748 F.Supp. 845, 849-50 (S.D.Fla.1990) (applying Florida law); Allen v. G.D. Searle & Co., 708 F.Supp. 1142, 1148 (D.Or.1989) (applying Oregon law); Kociemba v. G.D. Searle & Co., 680 F.Supp. 1293, 1305-06 (D.Minn.1988) (applying Minnesota law); Dupre v. G.D. Searle & Co., No. C84-146-L, 1987 WL 158107, at *4 (D.N.H. April 28, 1987) (applying New Hampshire law); Goodson v. Searle Labs., 471 F.Supp. 546, 548 (D.Conn. 1978) (applying Connecticut law); Dunkin v. Syntex Labs, Inc., 443 F.Supp. 121, 123 (W.D.Tenn.1977) (applying Tennessee law); Chambers v. G.D. Searle & Co., 441 F.Supp. 377, 381 (D.Md.1975) (applying District of Columbia law), aff'd, 567 F.2d 269 (4th Cir.1977); Hamilton v. Hardy, 37 Colo.App. 375, 549 P.2d 1099, 1110 (1976); Lacy v. G.D. Searle & Co., 567 A.2d 398, 400 (Del.1989); Ortho Pharmaceutical Corp. v. Chapman, 180 Ind.App. 33, 388 N.E.2d 541, 548-49, 553, 557 (1979); Humes v. Clinton, 246 Kan. 590, 792 P.2d 1032, 1040 (Kan.1990); Rhoto v. Ribando, 504 So.2d 1119, 1123 (La.Ct.App. 1987); Seley v. G.D. Searle & Co., 67 Ohio St.2d 192, 423 N.E.2d 831, 839-40 (1981); McKee v. Moore, 648 P.2d 21, 25 (Okla.1982); Vaughn v. G.D. Searle & Co., 272 Or. 367, 536 P.2d 1247, 1248 (1975); Taurino v. Ellen, 397 Pa.Super. 50, 579 A.2d 925, 928 (1990); Brecher v. Cutler, 396 Pa.Super. 211, 578 A.2d 481, 485 (1990); Terhune v. A.H. Robins Co., 90 Wash.2d 9, 577 P.2d 975, 978 (1978).
[19] See MacDonald v. Ortho Pharmaceutical Corp., 394 Mass. 131, 475 N.E.2d 65 (1985). The Massachusetts Supreme Judicial Court, in creating an exception to the learned intermediary doctrine for oral contraceptives, emphasized the active role of the patient in deciding to use "the pill" and the relatively passive role of the prescribing physician. Id. 475 N.E.2d at 69.
[20] Pls.' Resp. to Defs.' Mot. for Summ. J. at 25-26 (citing Hill v. Searle Labs., 884 F.2d 1064 (8th Cir.1985); Odgers v. Ortho Pharmaceutical Corp., 609 F.Supp. 867 (E.D.Mich.1985); Stephens v. G.D. Searle & Co., 602 F.Supp. 379 (E.D.Mich. 1985)).
[21] See Odgers, 609 F.Supp. at 878; Stephens, 602 F.Supp. at 381.
[22] See Reaves v. Ortho Pharmaceutical Corp., 765 F.Supp. 1287, 1291 (E.D.Mich.1991).
[23] See Hill, 884 F.2d at 1070-71.
[24] See West v. Searle & Co., 305 Ark. 33, 806 S.W.2d 608, 614 (1991).
[25] Pls.' Resp. to Defs.' Mot. for Summ. J. at 22-28.
[26] 498 F.2d 1264 (5th Cir.1974).
[27] Pls.' Resp. to Defs.' Mot. for Summ J. at 23-24 (citing Reyes, 498 F.2d at 1276).
[28] See Reyes, 498 F.2d at 1270.
[29] See Mem. in Supp. of Defs. Mot. for Summ. J. at Exs. 1 & 3 (attaching the Norplant Physician Labeling and Norplant Counseling Manual for Healthcare Professionals). Additionally, the Norplant Patient Brochure reinforced the existence of a physician-patient relationship by stating:

[The Norplant Patient Brochure] is not a replacement for the patient labeling or a careful discussion with your healthcare provider. You should discuss the information contained on the following pages with him or her when deciding whether the NORPLANT SYSTEM is the best birth control option for you.
Pls.' Supp. Mem. in Opp'n to Defs.' Mot. for Summ. J. at Ex. G (attaching the Norplant Patient Brochure) (see specifically page 3 of the brochure).
[30] Pls.' Resp. to Defs.' Mot. for Summ. J. at 25.
[31] Id. at 27.
[32] 863 F.2d 1173 (5th Cir.1988).
[33] Id. at 1178-79 (emphasis added) (citing Swayze v. McNeil Labs., 807 F.2d 464, 472 (5th Cir.1987) (holding that "[d]rug manufacturers must adequately warn physicians of the potential side-effects of their prescription drugs; thereafter, the physician, with his special knowledge of the patient's needs, assumes the burden of presiding over the patient's best interests.")).
[34] 394 Mass. 131, 475 N.E.2d 65 (1985).
[35] Pls.' Resp. to Defs.' Mot. for Summ. J. at 25-26.
[36] Id. at 26.
[37] Id. at 26-28.
[38] MacDonald, 475 N.E.2d at 69-70.
[39] Terhune v. A.H. Robins Co., 90 Wash.2d 9, 577 P.2d 975, 978 (1978). More than a half-dozen courts have followed Terhune's reasoning in expressly rejecting the active patient/passive physician rationale offered by the Massachusetts Supreme Court in MacDonald. See, e.g., Spychala v. G.D. Searle & Co., 705 F.Supp. 1024, 1032 (D.N.J.1988) ("Although a woman may be actively involved in the decision to use contraceptives, those contraceptives are administered only by prescription and upon the advice of a physician.... There is no reason apparent to me to differentiate between contraceptives and other prescription drugs to which the learned intermediary rule applies."); Lacy v. G.D. Searle & Co., 567 A.2d 398, 400 (Del.1989) ("Although it may well be true that the insertion of a contraceptive device is a more `elective' type of medical treatment than the consumption of prescriptive medicines, and a patient may have considerable input in selecting the device, we do not find that these differences appreciably change the sound reasoning for adopting the learned intermediary doctrine.") (footnote omitted); see also MacPherson v. Searle & Co., 775 F.Supp. 417, 424-25 (D.D.C. 1991); Reaves v. Ortho Pharmaceutical Corp., 765 F.Supp. 1287, 1291 (E.D.Mich.1991); Allen v. G.D. Searle & Co., 708 F.Supp. 1142, 1148 (D.Or. 1989); Kociemba v. G.D. Searle & Co., 680 F.Supp. 1293, 1305-06 (D.Minn.1988); West v. Searle & Co., 305 Ark. 33, 806 S.W.2d 608, 613-14 (1991); Martin v. Ortho Pharmaceutical Corp., 169 Ill.2d 234, 214 Ill.Dec. 498, 502-03, 661 N.E.2d 352, 356-57 (1996); Humes v. Clinton, 246 Kan. 590, 792 P.2d 1032, 1039-41 (1990).
[40] Pls.' Resp. to Defs.' Mot. for Summ. J. at 27.
[41] See Pls. Mem. in Opp'n to Defs.' Mot. in Limine to Bar Reference to Advertising and Other Materials Not Viewed by the Five Bellwether Plaintiffs at 4.
[42] Pls.' Resp. to Defs.' Mot. for Summ. J. at 28.
[43] 60 Fed.Reg. 44182, 44189 (1995).
[44] See Defs.' Reply Mem. in Supp. of Defs.' Mot. for Summ. J. at 5 n. 1 (referring to Plaintiffs' answers to interrogatories which indicate that Plaintiffs did not view any direct-to-consumer advertising prior to Norplant insertion).
[45] Whether a drug manufacturer's use of direct-to-consumer advertising is ever grounds for creating an exception to the learned intermediary doctrine remains to be seen. This is an issue which should be resolved by the Texas Supreme Court.
[46] Pls.' Resp. to Defs.' Mot. for Summ. J. at 27.
[47] Id. at 28.
[48] Mem. in Supp. of Defs.' Mot. for Summ. J. at 31-32 (citing FDA, New Drugs Requirement for Labeling Directed to the Patient, 43 Fed.Reg. 4214, 4215 (Jan. 31, 1978)).
[49] Martin v. Ortho Pharmaceutical Corp., 169 Ill.2d 234, 214 Ill.Dec. 498, 502, 661 N.E.2d 352, 356 (1996) (referring to FDA regulations requiring the provision of patient labeling). See, e.g., Spychala v. G.D. Searle & Co., 705 F.Supp. 1024, 1033 (D.N.J.1988) ("Patient brochures provided by the manufacturer to physicians for distribution to the consumer may aid the physician in communicating with his patient but do not establish the undertaking by the drug manufacturer of a voluntary duty to warn the patient directly."); Seley v. G.D. Searle & Co., 67 Ohio St.2d 192, 423 N.E.2d 831, 840 (1981) ("Informational pamphlets, such as provided Dr. Froehlich by Searle for distribution to his patients in the exercise of the doctor's discretion, can aid in expanding the range of communication between doctor and patient.... Although we recognize that the intent of such brochures is to ultimately benefit the user, we do not believe that by preparing such brochures and distributing them to physicians, a prescription drug manufacturer undertakes to render a voluntary service ... thereby extending the scope of its duty to warn."); see also MacPherson v. Searle & Co., 775 F.Supp. 417, 424-26 (D.D.C.1991); Taurino v. Ellen, 397 Pa.Super. 50, 579 A.2d 925, 930 (1990).
[50] "[O]nce the physician is warned, the choice of which drugs to use and the duty to explain the risks become that of the physician." Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912 (5th Cir.1992) (alteration in original) (quoting Stewart v. Janssen Pharmaceutica, Inc., 780 S.W.2d 910, 911 (Tex.App.  El Paso 1989, writ denied)).
[51] Mem. in Supp. of Defs.' Mot. for Summ. J. at 2. Texas and Fifth Circuit decisions have applied the learned intermediary doctrine to a variety of causes of action predicated on the alleged inadequacy of a prescription drug label. See Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 912 (5th Cir.1992) (applying the learned intermediary doctrine to claims of negligence and strict liability); Hurley v. Lederle Labs., 863 F.2d 1173, 1180 (noting that the learned intermediary doctrine applies to "inadequate warning claims" but not "design defect claims"); Rolen v. Burroughs Wellcome Co., 856 S.W.2d 607, 608 (Tex.App.  Waco 1993, writ denied) (involving breach of implied warranty of merchantability claim); Stewart v. Janssen Pharmaceutica, Inc., 780 S.W.2d 910 (Tex.App.  El Paso 1989, writ denied) (involving negligence and strict liability); Gravis v. Parke-Davis & Co., 502 S.W.2d 863, 868 (Tex.Civ.App.  Corpus Christi 1973, writ ref'd n.r.e.) (involving strict liability).
[52] Pls.' Supp. Mem. in Opp'n to Defs.' Mot. for Summ. J. at 4.
[53] FED.R.CIV.P. 56(c).
[54] Skotak, 953 F.2d at 912 (citation and quotations omitted).
[55] Id. at 913 (citation and quotations omitted).
[56] Id. (citation and quotations omitted).
[57] Id. (citation and quotations omitted).
[58] See id. at 912 (citing Stewart v. Janssen Pharmaceutica, Inc., 780 S.W.2d 910, 911 (Tex.App.  El Paso 1989, writ denied) (citation omitted)).
[59] Mem. in Supp. of Defs.' Mot. for Summ. J. at 20-21.
[60] Wheat v. Pfizer, Inc., 31 F.3d 340, 343 (5th Cir.1994) (quoting Willett v. Baxter Int'l, Inc., 929 F.2d 1094, 1099 (5th Cir.1991)).
[61] Mem. in Supp. of Defs.' Mot. for Summ. J. at 25 (referring to selected deposition excerpts of Plaintiffs' physicians, Drs. Haman, Brown, Bottorff, Balsley, and Hollins, attached as Exs. 9-13 to Defendants' Motion for Summary Judgment).
[62] See Pls.' Resp. to Defs.' Mot. for Summ. J. at 19-21 (referring to selected deposition excerpts of Plaintiffs' physicians).
[63] See Reply Mem. in Supp. of Defs.' Mot. for Summ. J. at 8-10 & Tab 2 (quoting selected deposition excerpts of Plaintiffs' physicians attached as Exs. 9-13 to Defendants' Motion for Summary Judgment). The relevant excerpts are as follows:

Dr. Haman (Kristy Youngblood's physician)
Q. Now, in light of everything that you have heard today from [plaintiffs' counsel] and in light of all of your training and experience with Norplant, do you still believe that Norplant is safe and effective?
A. Yes, ma'am, I do.
Q. Would you still prescribe it today to your patients?
A. Yes, ma'am, I would prescribe it to my patients just as ... I would do even for my family members.
Dr. Brown (Jennifer Burton's physician)
Q. When you prescribed Norplant for Jennifer Burton, did you consider it to be a good choice for her?
A. Yes, I did.
Q. Has your opinion about that changed in any way?
A. No.
Dr. Bottorff (Theresa Goins' physician)
Q. [D]o you still consider Norplant to be a safe and effective product generally?
A. Yes.
Q. And do you consider it specifically to have been a safe and effective product for Theresa Goins?
A. Yes.
Dr. Balsley (Andrea Elaine Haught's physician)
A. [I]f somebody tomorrow decided they wanted to have a Norplant after sitting and talking about their options, we would order a Norplant System and put it in for her.
Dr. Hollins (Beverly McDaniel's physician)
Q. Based on your experience with the Norplant System in inserting it in between three to four hundred women and following those women and the literature that you have read in medical journals and from other sources ... is there anything that Plaintiffs' Counsel has said to you today or has told you today or shown you today that has caused you to question your decision to insert Norplant in Beverly McDaniel?
A. No.
Q. Is there anything that you have learned today or have read today that has changed your belief regarding the fact that Norplant is a safe and effective method of contraception?
A. It is my belief that this is a safe and effective method....
Id.
[64] Stewart v. Janssen Pharmaceutica, Inc., 780 S.W.2d 910, 912 (Tex.App.El Paso 1989, writ denied).
[65] See Wheat v. Pfizer, Inc., 31 F.3d 340, 343 (5th Cir.1994) (quoting Willett v. Baxter Int'l, Inc., 929 F.2d 1094, 1099 (5th Cir.1991)). Plaintiffs "must come forward with evidence which would be sufficient to enable [them] to survive a motion for directed verdict at trial." Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir.1992) (citation omitted).